STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas E. ECKERT, Defendant-Appellant.†

Court of Appeals

*No. 95–1877–CR. Submitted on briefs May 13, 1996.—Decided July 23, 1996.*

(Also reported in 553 N.W.2d 539.)

†Petition to review denied.

499

For the defendant-appellant the cause was submitted on the briefs of *Rick B. Meier* of *Mandell & Ginsberg* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. Thomas E. Eckert appeals from a judgment of conviction entered after a jury found him guilty of one count of armed robbery, threat of force, as party to a crime, contrary to §§ 943.32(1)(b) and (2), and 939.05, STATS. He also appeals from an order denying his postconviction motion, which alleged ineffective assistance, and newly discovered evidence. Eckert raises three issues on appeal: (1) whether he

was denied ineffective assistance of trial counsel; (2) whether the trial court erred in denying his motion requesting a new trial on the basis of newly discovered evidence; and (3) whether the trial court erred in denying his motion to suppress. Because Eckert received effective assistance; because the trial court did not erroneously exercise its discretion in denying Eckert's motion for a new trial based on newly discovered evidence; and because the trial court did not erroneously exercise its discretion in denying Eckert's motion to suppress, we affirm.

## I. BACKGROUND

On November 30, 1991, at approximately 7:15 a.m., Jean Rydzik arrived in the parking lot of her place of employment, the Wonder Bread retail store located on West Loomis Road in the City of Greenfield. Before entering the lot, Rydzik noted a truck parked along side the road about two blocks from the store. As she backed into her parking stall, this truck pulled in front of her car. The passenger in the truck got out of the truck. Rydzik observed that he was wearing a ski mask and noticed that he was carrying a gun. He pointed the gun at Rydzik's head and got into her car. He told her he wanted the money from inside the store. The two went into the store and Rydzik gave the man the money from the safe. He instructed her to lie down and count to 500. After Rydzik heard the man leave, she called the police and gave them a description of both the truck and the masked gunman.

City of Greenfield Police Officer David Leon was one of the officers dispatched to the robbery scene. Prior to arriving at the store, however, he observed a vehicle that matched the description of the suspect vehicle. Leon followed the vehicle. Leon observed the

vehicle suddenly slow down and the passenger jump out. The passenger fired three times into Leon's squad car. The passenger then fled and eventually broke into the home of an elderly couple, Violet and James Brock. He held the Brocks hostage for approximately seven hours. The man identified himself to the Brocks as Frederick Horenberger. Horenberger eventually told them that he was going to kill himself, went down into the basement and did so.

Acting upon a description of the suspect that had shot at Leon, City of Greenfield Police Officer Craig Busche, apprehended Eckert from behind a garage on East Howard Avenue in Milwaukee. Busche stopped Eckert on the basis of Leon's description of the gunman who had shot at him. When Eckert was ordered from behind the garage by Busche, Eckert hesitated. When Eckert did come forward, he was searched for weapons and evidence and then handcuffed and strapped to the back seat of a squad car. Eckert was taken to the police department and placed in a holding room.

Eckert was charged with one count of first-degree attempted homicide as party to a crime and one count of armed robbery as party to a crime. He pled not guilty. Prior to trial, he moved to suppress the evidence obtained subsequent to his arrest, claiming the police lacked probable cause to arrest him. The trial court denied the motion. The jury acquitted Eckert of the attempted homicide charge, but convicted him of the armed robbery charge. Eckert filed a postconviction motion alleging ineffective assistance of trial counsel and seeking a new trial based on newly discovered evidence. The trial court denied the motion. Eckert now appeals.

## II. DISCUSSION

Eckert raises three issues on appeal: (1) whether he received ineffective assistance of trial counsel; (2) whether the trial court erred in denying his motion for a new trial based on newly discovered evidence; and (3) whether the trial court erred in denying his motion to suppress. We address each issue *seriatim.*

### A. *Ineffective Assistance.*

Eckert claims his trial counsel was ineffective because he: (1) failed to discuss the lesser-included offense of robbery with Eckert and failed to request the lesser-included offense instruction; (2) failed to discuss with Eckert his right to poll the jury and failed to request that the jury be polled; (3) failed to discover two witnesses, who potentially could have offered testimony to support Eckert's testimony; and (4) failed to call a witness who could have corroborated Eckert's testimony. After conducting a *Machner*[1] hearing, the trial court ruled that Eckert had received effective assistance of trial counsel.

Eckert has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 686 (1984). In order to prove that he has not received effective assistance, Eckert must show two things: (1) that his lawyer's performance was deficient; and, if so, (2) that "the deficient performance prejudiced the defense." *Id.* at 687. A lawyer's performance is not deficient unless he committed errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* In

[1] *See State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

order to show that counsel's performance was prejudicial, Eckert must prove that the errors committed by counsel were so serious that they deprived Eckert of a fair trial, a trial whose result is reliable. *See id.* In other words, in order to prove prejudice, Eckert must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In assessing Eckert's claim that his counsel was ineffective, we need not address both the deficient-performance and prejudice components if Eckert cannot make a sufficient showing on one. *See id.* at 697. The issues of performance and prejudice present mixed questions of fact and law. *State v. Sanchez*, 201 Wis. 2d 219, 236-37, 548 N.W.2d 69, 76 (1996). Findings of historical fact will not be upset unless they are clearly erroneous, *id.*, and the questions of whether counsel's performance was deficient and, if so, whether it was prejudicial are legal issues we review *de novo. Id.*

## 1. Lesser-Included Offense.

Eckert claims his trial counsel provided ineffective assistance by failing to discuss the lesser-included offense option and failing to request that the lesser-included offense instruction on robbery be submitted to the jury. The trial court determined that counsel's decision to decide this issue on his own was not deficient conduct and that even if the lesser-included offense instruction would have been given, that the result of the proceeding would not have been different.

During the *Machner* hearing, trial counsel testified that he did not specifically discuss with Eckert the

lesser-included offense option of robbery. Counsel indicated the reason for this was essentially the theory of defense. The defense theory was that Eckert did not participate in the robbery, and in fact was at a George Webb restaurant at the time the robbery took place. Counsel indicated that it would be inconsistent with this theory to ask for the lesser-included offense instruction because he would be telling the jury that Eckert was not there, but even if he was there, he did not know about the gun.

Eckert argues that *State v. Ambuehl*, 145 Wis. 2d 343, 425 N.W.2d 649 (Ct. App. 1988), adopts the *ABA Standards for Criminal Justice*, which requires defense counsel to confer with the client regarding a lesser-included offense request and that the decision of whether to request a lesser-included instruction should be a decision left to the defendant.[2] *Ambuehl*, 145 Wis. 2d at 355, 425 N.W.2d at 654. Our reading of the *Ambuehl* case does not comport with Eckert's contention. Although *Ambuehl* does reference and cite this ABA Standard, there is no language within *Ambuehl*, indicating that this standard was adopted as the law in our state. In fact, in *Ambuehl*, this court specifically notes that the proposition contained within the commentary to this ABA Standard does not contain any

_____

[2] The commentary to ABA standard 4-5.2(a)(i) provides:

> It is also important in a jury trial for the defense lawyer to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury. Indeed, because this decision is so important as well as so similar to the defendant's decision about the charges to which to plead, the defendant should be the one to decide whether to seek submission to the jury of lesser included offenses.

*State v. Ambuehl*, 145 Wis. 2d 343, 355-56 n.4, 425 N.W.2d 649, 654 n.4 (Ct. App. 1988) (citing *ABA Standards for Criminal Justice*, Standard 4-5.2, commentary (2d ed. 1980)).

citation to authority. *Id.* at 355-56, 425 N.W.2d at 654. Moreover, *Ambuehl* does not involve the situation present in the instant case: whether trial counsel has the obligation to specifically discuss with the defendant possible lesser-included offense instructions. In *Ambuehl*, the topic of lesser-included offense instructions was admittedly initially discussed with the client, and the client was arguing on appeal that after an additional charge was added, that the subject should have been discussed again. *Id.* at 356, 425 N.W.2d at 654. We rejected this argument because counsel and client had decided that requesting a lesser-included offense would be inconsistent with the theory of defense. *Id.* Accordingly, we are not persuaded that *Ambuehl* controls the issue that Eckert presents.

In addressing the issue that Eckert presents, we note that the right to request a lesser-included offense instruction is neither a constitutional nor a fundamental right. *State v. Nicholson*, 148 Wis. 2d 353, 366, 435 N.W.2d 298, 304 (Ct. App. 1988). Further, the decision of whether to request a lesser-included offense instruction is a complicated one involving legal expertise and trial strategy. As noted by the trial court:

> There are sometimes a whole range of arguable lesser-included offenses, and the considerations that are involved in whether or not one wants to request an instruction for what are sometimes three or more lesser included, are extremely complicated. It would require a substantial recess, I think, in those cases to allow a defendant to fully understand and intelligently make that decision.

Given these factors, we are unwilling to conclude that trial counsel's failure to specifically discuss with Eck-

ert the possible lesser-included offense of robbery and counsel's failure to request a lesser-included offense instruction constituted deficient performance.

Rather, we conclude that a defendant does not receive ineffective assistance where defense counsel has discussed with the client the general theory of defense, and when based on that general theory, trial counsel makes a strategic decision not to request a lesser-included instruction because it would be inconsistent with, or harmful to, the general theory of defense. *See State v. Koller*, 87 Wis. 2d 253, 264, 274 N.W.2d 651, 657 (1979) (defense counsel has a right to select from the available defense strategies and counsel's failure to request a lesser-included instruction when the defense strategy was that defendant had a better chance of acquittal without any lesser-included instructions was not ineffective).

This is precisely what happened here. Eckert's counsel testified that he had discussed the general theory of defense with Eckert. Counsel testified: "We obviously had conversations about what was going to happen, what positions we were taking, those kind of things. . . . Mr. Eckert throughout our contacts indicated he was innocent. He said he didn't do it, wasn't present, and had nothing to do with the offenses." Accordingly, the theory of defense was that Eckert did not participate in and was not present when the armed robbery took place. Eckert and counsel agreed to this alibi theory of defense. Under these circumstances, we cannot hold that trial counsel was required to specifically discuss with Eckert a lesser-included offense instruction that would conflict with the defense theory. To require counsel to do so under these circumstances would unnecessarily intrude upon trial counsel's abil-

ity to strategically manage the client's defense. *See Lee v. State*, 65 Wis. 2d 648, 654-56, 223 N.W.2d 455, 458-59 (1974) (a reviewing court will not usurp the trial counsel's right and responsibility to engage in trial tactics and strategies that counsel believes will best serve the client).

We conclude that counsel's strategic decision not to request a lesser-included instruction on armed robbery was reasonable, given the fact that such instruction would have been inconsistent with the general theory of defense. We also conclude that when counsel's general discussions with Eckert revealed that Eckert was committed to an alibi defense, counsel was not obligated to specifically discuss with Eckert a lesser-included offense instruction that would contradict that defense. Therefore, we agree with the trial court that trial counsel's failure to specifically discuss the possible lesser-included offense instruction with Eckert, and the failure to request the lesser-included offense instruction was not deficient performance.

2. Jury Polling.

Eckert claims his trial counsel provided ineffective assistance by failing to discuss his right to poll the jury and by failing to request that the jury be polled. The trial court rejected this claim, reasoning that this decision is one addressed to counsel and that no prejudice resulted.

The decision regarding whether to request an individual polling is one delegated to counsel, *State v. Yang*, 201 Wis. 2d 721, 740, 549 N.W.2d 769, 776 (Ct. App. 1996) and, therefore, counsel's decision to not even inform Eckert of his right to an individual polling

511

is not in itself deficient performance. *See id.* "[W]hen defense counsel is present at the return of the jury verdict and does not request an individual polling, whether counsel's performance is deficient depends on *all the circumstances.*" *Id.* at 741, 549 N.W.2d at 777 (emphasis added).

Under the relevant circumstances in Eckert's case, we conclude that counsel's failure to discuss jury polling, and his failure to request that the jury be polled was not ineffective assistance. Eckert's counsel was present for the verdict. The verdict involved an acquittal on the homicide charge and a conviction on the armed robbery charge. As noted by the trial court, a request for an individual polling may have posed some risk if a juror had indicated intent to convict on the homicide and acquit on the robbery. Counsel's decision to accept the unanimous verdict without individual polling averted this possibility. Moreover, the standard jury instruction, which was given in this case, tells the jury that the verdict must be unanimous, and that all twelve must agree on the verdict. Further, the jurors did not present any questions to the court during deliberations that revealed some discord with respect to their unanimity.

Finally, there is no indication in the record that the jury's verdict was not unanimous and, therefore, we conclude that counsel's decision not to request individual polling did not constitute deficient performance.[3]

---

[3] The *State v. Behnke,* 155 Wis. 2d 796, 456 N.W.2d 610 (1990), case does not control here because "[t]he deficient performance in *Behnke* was counsel's failure to be present when the jury returned its verdict." *State v. Yang,* 201 Wis. 2d 721, 741 n.9, 549 N.W.2d 769, 777 n.9 (Ct. App. 1996).

### 3. Failure to Discover Witnesses.

■■

Eckert claims he received ineffective assistance of trial counsel because counsel failed to discover the testimony that Robert Horenberger and Tony Synowicz could have provided to assist the defense. Counsel testified at the *Machner* hearing that he did not think that Horenberger's testimony would have been helpful to the defense because it did not change Eckert's admission that he was with Frederick Horenberger the morning of the robbery. The trial court determined that Horenberger's testimony was not significant and, therefore, it was not ineffective for counsel to fail to investigate Horenberger as a witness. We agree. For reasons discussed later in this opinion, we conclude that Horenberger's testimony would not have made a difference in the verdict. Accordingly, counsel's failure to investigate this witness was not prejudicial. Because we conclude that this conduct did not prejudice Eckert, we need not address the performance prong of the ineffective assistance test. *State v. Kuhn*, 178 Wis. 2d 428, 438, 504 N.W.2d 405, 410 (Ct. App. 1993).

■■

Trial counsel also testified at the *Machner* hearing that he did not call Synowicz because he already had a witness who would place Eckert at the George Webb restaurant at about the time of the robbery. The trial court concluded that the absence of Synowicz's testimony was not prejudicial. We agree. Synowicz's testimony would only have been repetitive of Lanier Roberts's, who testified that he saw Eckert standing in front of the George Webb restaurant at about 7:45 a.m. the morning of the robbery. Roberts did not vacillate with respect to his certainty. Synowicz, in contrast,

was not certain that the individual, whom he only viewed from the back, was Eckert. We conclude that counsel's failure to investigate Synowicz as a witness did not prejudice Eckert. Accordingly, his ineffective assistance claim on this basis fails.

### 4. Failure to Call Witness.

Eckert claims he received ineffective assistance of trial counsel because his counsel failed to call Ralph Senner as a witness. Senner's affidavit averred that he would have testified that he saw Frederick Horenberger driving Eckert's truck *alone* on November 25 and November 29. Eckert contends that this testimony would have countered Rydzik's testimony that she had seen Eckert's truck parked across from the store approximately one week before the robbery and that this evidence would have rebutted the assertion that Eckert was involved in the planning of the crime. The trial court rejected this claim ruling:

> I find that this was neither ineffective, nor was it prejudicial. The fact that the defendant trusted Horenberger to be driving his vehicle around the time of this crime, and during the period briefly before it, is as consistent with the State's theory as it is with the defendant's theory.
>
> As [defense counsel] noted, in his testimony Horenberger wasn't charged with driving the truck. No one claimed he drove the truck at the time of the crime. I understand this might have some significance as it pertains to Ms. Rydzik's recollections of all of this. It might mean that that truck was there on November 22nd, and Horenberger was driving it, and Eckert wasn't there on that date, but her recollections about this, and about who were there, and

514

about times were I'm satisfied sufficiently imprecise for all sorts of obvious reasons; that the fact that on one occasion Horenberger was driving this truck for someone else, is just of no consequence to the defense. And to the extent it provides any help to them, it equally helps the State by showing this is someone he was involved with. This was someone he trusted to drive his truck. It's as consistent with the State's theory of the case as it is with the defendant's.

We agree that Senner's testimony would have been more helpful to the State than to the defense. Accordingly, trial counsel's failure to call Senner as a witness was neither deficient nor prejudicial.

## B. Newly Discovered Evidence.

Eckert next claims that the trial court erred in denying his motion for a new trial on the basis of newly discovered evidence. The evidence that Eckert claims constitutes newly discovered evidence is the testimony of two witnesses, Robert Horenberger and Tony Synowicz. He claims that Horenberger's testimony that his brother lived with him 300 miles away from Milwaukee, and that his brother did not go to Milwaukee until one week prior to November 30th, would have refuted Rydzik's testimony that she had seen Eckert with Horenberger several weeks before November 30th "casing the store." He claims that Synowicz's testimony that he had seen Eckert in the George Webb restaurant on November 30th at approximately the same time as the robbery occurred, would have corroborated Eckert's alibi testimony. The trial court rejected Eckert's claims.

 The test to determine whether newly discovered evidence warrants a new trial has five factors: (1) the evidence must have been discovered after the trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached at a new trial. *State v. Coogan*, 154 Wis. 2d 387, 394-95, 453 N.W.2d 186, 188 (Ct. App. 1990). If the newly discovered evidence fails to satisfy any one of these five requirements, it is not sufficient to warrant a new trial. *State v. Kaster*, 148 Wis. 2d 789, 801, 436 N.W.2d 891, 896 (Ct. App. 1989). A motion for a new trial is addressed to the sound discretion of the trial court and we will not reverse the trial court's decision unless it erroneously exercised its discretion. *Id.*

 The trial court reasoned that neither Horenberger's nor Synowicz's testimony could satisfy the fifth requirement: a reasonable probability of a different result after a new trial. Horenberger's testimony, if believed, would only result in the jury concluding that Rydzik's recollection of when she had previously seen Horenberger in the store was closer to the date of the robbery than she had remembered. The trial court indicated that Rydzik's testimony in this regard was only an estimate and that Rydzik was not certain about seeing Fred Horenberger in the store prior to the robbery, but that she was sure about seeing Eckert in the store before the date of the robbery. These facts led the trial court to conclude that Horenberger's testimony would not have resulted in any different

view of Rydzik's credibility regarding her recollection of the crime and, as a result, did not have a reasonable probability of changing the outcome. The trial court's analysis was based on the relevant facts, the appropriate law, and a reasonable conclusion. We conclude that the trial court did not erroneously exercise its discretion in rejecting Eckert's motion with respect to Horenberger's testimony.

The trial court reached a similar conclusion with respect to Synowicz's testimony. The trial court indicated that Synowicz was uncertain that the person whom he saw in the George Webb restaurant on the morning of the robbery was in fact Eckert because he only saw the person's back. Even if Synowicz's testimony was believed, it would not have a reasonable probability of changing the outcome because it was conceded that Eckert was at the restaurant the morning of the robbery, but the timing was slightly different. Synowicz testified that he was at the restaurant around 7:30 or 8 a.m. Eckert's truck was spotted by police at about 7:38 a.m. Given these time frames, Eckert could have walked through the restaurant after abandoning the truck and still have been seen by Synowicz. We conclude that the trial court's analysis was reasonable and based on the relevant facts to which it applied the pertinent law. We find no erroneous exercise of discretion.

### C. *Motion to Suppress.*

Finally, Eckert claims the trial court erred in denying his motion to suppress. He contends that his arrest was illegal and, therefore, all of the evidence obtained subsequent to the illegal arrest should have been suppressed. The trial court determined that prob-

able cause did exist to arrest Eckert and, accordingly, denied his suppression motion.

In reviewing a trial court's ruling on a motion to suppress evidence, the trial court's findings of fact will be upheld unless they are clearly erroneous. *State v. King*, 175 Wis. 2d 146, 150, 499 N.W.2d 190, 191 (Ct. App. 1993). "Whether a search or seizure passes constitutional muster, however, is a question of law subject to *de novo* review." *Id.; see also Ornelas v. U.S.*, 116 S. Ct. 1657, 1659 (1996).

Probable cause requires that the police officer have facts and circumstances within his or her knowledge sufficient to warrant a reasonable person to conclude that the defendant has committed or is in the process of committing an offense. The information available to the officer must lead a reasonable police officer to believe that "guilt is more than a possibility." "Probable cause includes the 'totality of the circumstances' within the officer's knowledge at the time, though the ' "evidence need not reach the level of proof beyond a reasonable doubt or even [show] that guilt is more likely than not." ' " *State v. Richardson*, 156 Wis. 2d 128, 148, 456 N.W.2d 830, 838 (1990) (citations omitted).

The trial court concluded that probable cause existed to arrest Eckert for the following reasons:

> At the time [the officer] made the arrest he had the following information: He had a description of a person that was believed to be the shooter as being approximately five-ten, all dressed in blue, brown hair, and wearing a ski mask.
> The defendant matched two of those things. He was approximately that height, and I don't consider

that slight deviations in height are of any great significance, and I don't think the record even shows what his actual height is. It certainly looks to me like an accurate description of the person that I've seen come in and out of court or close enough for these kind of fast-moving circumstances. All dressed in blue.

It was a pretty specific description, particularly in an area where there aren't a lot of people, and while I didn't mention it, I am finding that there was not a great deal of pedestrian traffic in this area.

If we were downtown at the height of noon looking for someone all dressed in blue it would be one thing, but on quiet streets and early on a Saturday morning, the description takes on much greater weight.

In addition to that, Officer Busche had a person who was in the vicinity where the shooter might be found. True, he was north rather than south, and that tends to reduce the quality of his probable cause, but it doesn't wipe it out. He doesn't have to ignore an obvious suspect simply because the person was headed south and he sees a suspect go slightly to the north.

As I indicated, on Friday I looked at a map during the testimony. I've looked at it since. We're talking about a very small area here between First Place, Second Street, Howard and Howell, and while it—it doesn't add to the probable cause the way it might have if he had found the suspect to the south, it doesn't defeat it.

True, we don't have a brown-haired individual, and that certainly is a problem for finding probable cause, but I don't think police officers have to rule out all explanations here.

There had been a dispatch including a first description of someone being—having brown hair

and a later description of him wearing a ski mask. I had thought in there there was a description somewhere of a brown ski mask, but I may have confused that with what was later found.

But any reasonable officer could certainly consider whether or not the hair color is significant here for someone who's wearing a ski mask or a brown ski mask and whether that may simply be a problem in identification because they're trying to determine hair color in someone who is wearing a ski mask, so it's certainly within reason to discount that to some degree.

More significant than this matter of the hair color are the defendant's actions when he was first seen. There's been a lot of case law on the extent to which flight and furtive gestures might provide a reasonable basis for a <u>Terry</u> stop, and while it's clearly not enough for arrest, it's also clearly a factor which can be considered in finding probable cause.

And I'm satisfied that the actions of the defendant in—in the context of the geography, in context of the description, were enough to lead a police officer to reasonably believe that this was the person who Officer Leon was reporting who had shot at him, notwithstanding the fact that this was clearly a mistake.

The issue was probable cause; not whether it turned out to be right or not. And if it had turned out to be right, I would find that this was probable cause. It's not overwhelming. It's pretty thin, and that's obvious, but it meets the standard of probable cause if it had turned out to be correct, and the same standard applies, even though it turned out to be wrong.

Eckert does not challenge the trial court's findings of fact, only its conclusion that probable cause to arrest

existed, based on these facts. Eckert focuses his argument on the grounds that the gunman reportedly fled south, yet Eckert was found north of the scene. We agree with the trial court that this factor does not negate probable cause. Eckert was discovered in the same geographical area. Eckert also points to a two-inch-height discrepancy between him and the gunman, and the difference in hair color. Again, we agree with the trial court's analysis in this regard. A two-inch-height difference is negligible and the hair color alone would not negate probable cause, especially given the additional fact that the gunman had worn a ski mask, which might make hair color identification difficult.

In sum, based on the similarity between the gunman and Eckert, and the temporal and geographic proximity, we conclude that the officer had probable cause to arrest Eckert. Accordingly, the trial court did not err in denying his motion to suppress.

*By the Court.*—Judgment and order affirmed.

SCHUDSON, J. (*dissenting*). We need only reach the issue of jury polling because, under this court's recent decision in *State v. Yang*, 201 Wis. 2d 721, 549 N.W.2d 769 (Ct. App. 1996), counsel's performance was deficient and requires a new trial.

In *Yang*, this court "decline[d] to hold that counsel's failure to inform a defendant of the right to an individual polling is, *in itself*, deficient performance." *Yang*, 201 Wis. 2d at 740-741, 549 N.W.2d at 776-777 (emphasis added). This court explained:

> When the trial court reads the verdict, it may ask the jurors as a group, as it did in this case, if it is the verdict of each one.

We conclude the better rule is that when defense counsel is present at the return of the jury verdict and does not request an individual polling, whether counsel's performance is deficient depends on all the circumstances, not simply on whether counsel explained to the defendant the right to an individual polling.

The relevant circumstances in this case are that the court read the standard jury instruction on a unanimous verdict before the jury began its deliberations. The jurors answered affirmatively when the court read their verdict and asked if it was their verdict by raising their hands to so indicate.

*Id.*, 201 Wis. 2d at 741-742, 549 N.W.2d at 777. Thus, in *Yang, because the trial court collectively polled the jury,* counsel's failure either to inform his client of the right to individual polling or to request individual polling did not require a new trial.

Under *Yang,* what are "[t]he relevant circumstances" in this case?—(1) an uninformed defendant; (2) no individual polling; and (3) no collective polling. That's all. Although *Yang* and the majority in this case also mention that the respective trial courts provided the standard jury instruction on unanimity, neither *Yang* nor the majority suggests that this instruction somehow salvages what otherwise would be counsel's deficient performance. Indeed, were that so, virtually all jury polling issues would vanish simply because the standard unanimity instruction is given in *every* criminal case. Under *Yang,* the unanimous verdict jury instruction, standing alone, does not trump the other circumstances.

Citing *State v. Behnke,* 155 Wis. 2d 796, 456 N.W.2d 610 (1990), *Yang* reiterates that "[t]he right to an individual polling of the jury is a significant right because it is a means to test the uncoerced unanimity

of the verdict." *Yang*, 201 Wis. 2d at 741, 549 N.W.2d at 777. *Yang* may have somewhat softened the protection of that right by allowing collective polling to substitute for individual polling. *Yang*, however, does not retreat from the settled proposition that a defendant's right to poll the jury, if not waived, is absolute and its denial requires reversal. *State v. Wojtalewicz*, 127 Wis. 2d 344, 346, 379 N.W.2d 338, 339 (Ct. App. 1985); *Behnke*, 155 Wis. 2d at 802-803, 456 N.W.2d at 612-613. Indeed, *Yang* solidifies that proposition by applying *Behnke*, where counsel was not present when the jury returned its verdict, to a case where counsel was in court.

Defense counsel neither informed Eckert of his right to poll the jury nor requested that the jury be polled. It is undisputed that had Eckert known of his right to poll the jury, he would have requested jury polling. It is undisputed that the jury was not polled, individually or collectively. It is inescapable, therefore, that if we apply *Behnke* and *Yang*, a new trial is required. It is equally inescapable that the majority's spin of *Yang* turns away the right to jury polling. Accordingly, I respectfully dissent.