COURT OF APPEALS
DECISION
DATED AND FILED

November 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP572-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF3300

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LORAINZ D. JOHNSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. CONEN and MICHELLE ACKERMAN HAVAS, Judges. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lorainz D. Johnson appeals from a judgment of conviction for first-degree reckless homicide and an order of the circuit court denying his postconviction motion for a new trial.[1]

¶2 On appeal, Johnson first argues that he is entitled to a new trial because he received ineffective assistance of counsel. He contends that his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of second-degree reckless homicide. He also contends that his trial counsel was ineffective for failing to request WIS JI—CRIMINAL 801, the jury instruction that specifically applies to self-defense for criminally reckless conduct. Johnson additionally argues that he is entitled to a new trial in the interest of justice.

¶3 For the reasons set forth below, we conclude that Johnson did not receive ineffective assistance of counsel and that the interest of justice does not require a new trial. Accordingly, we affirm.

## BACKGROUND

¶4 The State charged Johnson with first-degree reckless homicide for the shooting death of Jovonte Daniels, and the case proceeded to a jury trial. At trial, witness testimony established that on the night of July 23, 2016, Johnson was walking into a gas station convenience store as Daniels was walking out. Daniels approached Johnson, and the two began to argue. Daniels bent over to put down

---

[1] The Honorable Jeffrey A. Conen presided over the trial and sentencing and entered the judgment of conviction. The Honorable Michelle Ackerman Havas decided Johnson's postconviction motion. We refer to Judge Conen as the trial court and Judge Havas as the postconviction court.

the chips and sodas he was carrying, and as he was standing back up, Johnson shot him in the chest. At the time Johnson shot Daniels, the two were standing only a few steps apart. Johnson fled from the gas station and hid the gun at a nearby bus stop. Daniels returned to his truck, and his girlfriend took him to the hospital, where he died of his injuries.

¶5 In addition to the witness testimony about the shooting, the jury also heard testimony that Daniels and Johnson were romantically involved with the same woman and that the two men exchanged both written and voice messages on Facebook in the months prior to their encounter at the gas station. In several of the messages, Daniels accused Johnson of damaging his girlfriend's car, he insulted Johnson, and he threatened to kill Johnson. In fact, in one of the messages, Daniels sent Johnson a picture of Daniels holding a gun with an extended magazine.

¶6 Johnson testified at trial that he shot Daniels in self-defense because he felt threatened by Daniels that night at the gas station as a result of the threats that Daniels made to him on Facebook. Johnson testified that on that night, Daniels prevented him from entering the gas station convenience store and that as he was telling Daniels that he did not "want a beef with [Daniels]," Daniels "ke[pt] coming towards [him]" saying, "I told you when I seen you I was going to fuck you up." Then, Johnson testified that Daniels dropped the items he was carrying, and as Daniels's right arm was coming up, Johnson fired his gun once. At that point, Daniels "took off running one way and [Johnson] went the other way." Johnson testified that when he left the gas station, he did not know that Daniels was shot—rather, he believed that Daniels was going to chase him. He also testified that he fled the scene because he feared that Daniels would come after him when he saw Daniels run to his truck.

¶7      Johnson further testified that he believed that Daniels was going to shoot him that night at the gas station. He stated that Daniels had a gun at the gas station, and that he believed the gun was similar to the one that Daniels was holding in the Facebook message that he sent to Johnson.[2]

¶8      At the close of trial, the jury was instructed on self-defense using WIS JI—CRIMINAL 805, and both the State and trial counsel argued in closing about whether Johnson's conduct constituted self-defense.[3] The State argued:

> Ultimately where this all comes down to is this. If you believe Mr. Johnson, you should find him not guilty. Because if he told you the truth, that [Daniels] had a gun, was pulling it out, that [Daniels] made these threats on Facebook to kill him, that he believed those threats, then his actions are privileged and you should find him not guilty. But if [you] don't believe him, then there's no self-defense. And that's what this case is all about, is he telling the truth. And that's a question of credibility.

The State then argued that everything that Johnson said was a lie.

¶9      Trial counsel argued that "the question is whether my client acted in self-defense." He did not contest that Johnson argued with Daniels and that Johnson shot him. Instead, trial counsel highlighted that Daniels made "serious" threats against Johnson through Facebook messages and "Johnson did what he had to do to protect his own life." He told the jury, "[U]nder [these] circumstances it's

---

[2] In contrast to Johnson's testimony, Daniels's girlfriend and an employee at the gas station testified that they never saw Daniels with a gun that day. In fact, the gas station employee testified that Daniels was shot right away as he was standing up, and Daniels's girlfriend described that Daniels was squaring up to fight Johnson when he put down the chips. Investigating officers also did not recover a gun connected to Daniels.

[3] Prior to trial, counsel submitted a request for WIS JI—CRIMINAL 850. Following the lead of the parties, we accept that this request was made in error, and we construe this request instead as one for WIS JI—CRIMINAL 805.

rational for a human being who's confronted with danger, deadly danger, as Mr. Johnson was, to react … to engage in conduct which would save their own life."

¶10    The jury ultimately found Johnson guilty of first-degree reckless homicide, and he was subsequently sentenced to twenty-four years of imprisonment, composed of fourteen years of initial confinement and ten years of extended supervision.

¶11    Johnson filed a postconviction motion, arguing that he received ineffective assistance of counsel and that a new trial was warranted in the interest of justice.  As to his claim of ineffective assistance of counsel, Johnson argued that trial counsel was ineffective when he failed to request an instruction on the lesser-included offense of second-degree reckless homicide, and that his trial counsel was ineffective for failing to request WIS JI—CRIMINAL 801, which specifically applies to self-defense for criminally reckless conduct.  The postconviction court held a *Machner*[4] hearing on Johnson's motion.

¶12    At the hearing, trial counsel testified that his overall trial strategy was self-defense, and he testified that he discussed a self-defense strategy and taking an "all-or-nothing approach"[5] with Johnson, both before trial and during trial.  As part of this strategy, trial counsel specifically discussed the possibility of requesting a jury instruction on the lesser-included offense of second-degree

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[5] In this case, the phrase "all or nothing approach" meant that the defense would be that Johnson was not guilty of first-degree reckless homicide, focusing on acquittal based on self-defense rather than pursuing a lesser-included offense of second-degree reckless homicide.

reckless homicide with Johnson at the close of the State's case, before Johnson testified. He explained his reasoning behind continuing with the original strategy saying that "the evidence had been going in pretty well … and so it was an all-or-nothing approach." As to whether he thought he could maintain a self-defense strategy and also pursue a lesser-included offense of second-degree reckless homicide, trial counsel testified that "[o]f course you could," but whether that was a good strategy is "another issue."

¶13     Trial counsel further testified that the conversation he specifically had with Johnson about requesting an instruction on the lesser-included offense occurred in the court's prisoner holding cell the morning before Johnson was scheduled to testify.[6] At the time of the conversation, trial counsel believed that Johnson was understanding the conversation; however, trial counsel did testify that, in hindsight, he "wish[ed]" he had asked for a mistrial in order to allow Johnson more time to recover from the seizure Johnson had the day before.

¶14     In contrast to trial counsel's testimony, Johnson testified that trial counsel never discussed the lesser-included offense with him that morning in the holding cell and that the conversation that trial counsel described never happened. Instead, Johnson testified that he had a seizure the day before he testified and that he was given his seizure medication at the jail. He further testified that he remembered coming back to trial the next day, and that he knew he was going to testify. Johnson described that he was "back to [him]self" and was feeling

---

[6] Johnson was originally scheduled to testify on the second day of trial. However, prior to Johnson taking the stand, he suffered a seizure, and the proceedings were adjourned for Johnson to receive medical care. The trial resumed the following morning, and Johnson testified at that time.

"prepared [and] ready to testify" that morning. However, despite feeling prepared and ready to testify, he said that he never had a conversation with trial counsel about an instruction on a lesser-included offense of second-degree reckless homicide.

¶15    The postconviction court subsequently denied Johnson's motion. Specifically, the postconviction court found that the issue regarding the lesser-included offense instruction came down to a credibility determination, and the postconviction court found trial counsel's account of events more credible. The postconviction court explained this credibility determination:

> I know Mr. Johnson is saying it did not happen. Mr. Johnson, however, indicates that he was fully in regard of himself. He just indicates this is—who do I believe? You say it did not happen. The end. You said you were preparing for testimony. You had gathered yourself. You were ready to go. So you're not saying that you were so affected by your seizure the day before that you were unable to remember the conversation. You're saying it did not happen.

The postconviction court further explained:

> But taking Mr. Johnson's own comments in what he said— and I wrote it down. He was given the meds at the jail after the seizure. He knew he was going to testify, doesn't remember the conversation, was preparing to testify, [and] was back to myself. That's the part that hit me. You were back to yourself.
>
> So this isn't a question of him being so affected by the seizure that he was able to do that.

Thus, the postconviction court found that trial counsel's failure to request a lesser-included offense instruction for second-degree reckless homicide was not deficient performance because trial counsel discussed the instruction with Johnson and

decided to continue with the all-or-nothing approach after that conversation and an assessment of the trial evidence.

¶16    As to Johnson's argument that he received ineffective assistance of counsel for counsel's failure to request a different self-defense instruction, the postconviction court found that Johnson suffered no prejudice. In so doing, the postconviction court pointed to the jury instructions that were given and the closing arguments that were made, and it stated that the jury was clearly presented with "a full complement of the law and what they were to consider." The postconviction court also stated that the jury was told by the State and trial counsel that if it believed Johnson, the jury should acquit, but if the jury did not believe Johnson, it should convict. Thus, the postconviction court found that Johnson suffered no prejudice because a different jury instruction on self-defense would not have changed what was already presented to the jury.

¶17    Johnson now appeals.

## DISCUSSION

¶18    On appeal, Johnson argues that he is entitled to a new trial because his trial counsel was ineffective for two reasons. First, he contends that his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of second-degree reckless homicide. Second, he contends that his trial counsel was ineffective for failing to request a jury instruction that specifically applies to self-defense for reckless criminal conduct. He additionally argues that he is entitled to a new trial in the interest of justice.

¶19    We address each argument in turn, and we conclude that Johnson did not receive ineffective assistance of counsel, nor is he entitled to a new trial in the interest of justice.

### I.    Ineffective Assistance of Counsel

¶20    "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective:  (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.*

¶21    "To demonstrate deficient performance, the defendant must show that his counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted).  Prejudice occurs when counsel's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different. *State v. Erickson*, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999).  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citations omitted).

¶22    "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.  "We will not reverse the circuit court's findings of fact unless they

are clearly erroneous." *Id.* "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." *Id.*

¶23    We need not address both prongs of the analysis if the defendant makes an insufficient showing on one. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

## II.    Failure to Request an Instruction for a Lesser-Included Offense of Second-Degree Reckless Homicide

¶24    Johnson argues that his trial counsel was ineffective because his trial counsel took an all-or-nothing approach and failed to request a jury instruction on the lesser-included offense of second-degree reckless homicide.   He further contends that he was entitled to a jury instruction on second-degree reckless homicide because the evidence supported a finding that he did not act with utter disregard.[7]   Therefore, he argues that his trial counsel was ineffective for failing to request the instruction for second-degree reckless homicide.[8]

¶25    We disagree, and we conclude that trial counsel's performance was not deficient because trial counsel discussed an all-or-nothing approach with Johnson prior to trial, specifically discussed a lesser-included offense instruction

---

[7] The element of utter disregard is the defining element for first-degree reckless homicide, and without proof of utter disregard, Johnson argues that he could only be convicted of second-degree reckless homicide. *See State v. Miller*, 2009 WI App 111, ¶32, 320 Wis. 2d 724, 772 N.W.2d 188 (recognizing that first- and second-degree reckless homicide require proof of the same elements with the exception of the element of utter disregard).

[8] In connection with this argument, Johnson raises an additional argument that his trial counsel was ineffective for failing to argue that Johnson did not act with utter disregard. However, we conclude that Johnson did not raise this argument below, and therefore, we decline to address his argument on this point further. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) ("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal.").

with Johnson during the trial, and made a reasonable strategic decision based on an assessment of the trial evidence.

¶26 Here, we start with the postconviction court's finding that trial counsel discussed the trial strategy with Johnson and specifically discussed a lesser-included instruction with Johnson in the holding cell. As a factual finding based on a credibility determination, we accept the postconviction court's finding that this discussion occurred unless such a finding is clearly erroneous. *See State v. Kimbrough*, 2001 WI App 138, ¶29, 246 Wis. 2d 648, 630 N.W.2d 752.

¶27 We do not discern any error in the postconviction court's finding. The postconviction court thoroughly explained why trial counsel's account of trial strategy discussions was more credible and pointed to Johnson's testimony at the *Machner* hearing that Johnson was fully prepared and ready to testify that morning and was otherwise "back to [him]self." Thus, having established that trial counsel discussed the trial strategy with Johnson and specifically discussed whether to include an instruction on the lesser-included offense of second-degree reckless homicide, we turn to whether trial counsel's performance was deficient.

¶28 Trial counsel's decision to take an all-or-nothing approach was a strategic decision based on trial counsel's discussion with Johnson, and such an approach has been repeatedly recognized as reasonable. "[T]he decision of whether to request a lesser-included offense instruction is a complicated one involving legal expertise and trial strategy." *State v. Eckert*, 203 Wis. 2d 497, 509, 553 N.W.2d 539 (Ct. App. 1996). Thus,

> a defendant does not receive ineffective assistance where defense counsel has discussed with the client the general theory of defense, and when based on that general theory, trial counsel makes a strategic decision not to request a

11

> lesser-included instruction because it would be inconsistent with, or harmful to, the general theory of defense.

*Id.* at 510.

¶29 In this case, trial counsel discussed requesting a lesser-included offense instruction with Johnson at the close of the State's evidence, and even prior to trial, trial counsel discussed an all-or-nothing approach with Johnson and developed a self-defense theory of the case. Trial counsel's decision, therefore, to continue with the all-or-nothing approach was not deficient for allegedly failing to discuss a lesser-included offense instruction with Johnson. *See id.*

¶30 However, that does not end our analysis because Johnson nevertheless argues that he was entitled to the instruction and continuing with the all-or-nothing approach was unreasonable, given the evidence weighing against self-defense and in favor of second-degree reckless homicide. Johnson contends that there were certain "bad facts" that were undisputed—including that Johnson fled the scene and hid the gun, that Johnson responded to some of Daniels's Facebook messages in a joking manner, and that the two witnesses testified that Daniels was unarmed—that made it unreasonable to continue with self-defense. He further contends that there were certain facts supporting second-degree reckless homicide that made it unreasonable to fail to pursue an instruction on second-degree reckless homicide. These facts include that Johnson fired only one shot, that there was a history of Facebook messages between Johnson and Daniels, and that Johnson eventually turned himself in to the police about seven to eight days after the shooting.

¶31 Regardless of the facts that Johnson argues weigh against self-defense and in favor of second-degree reckless homicide, at the ***Machner*** hearing

trial counsel explained his reasoning behind continuing with the original strategy saying that "the evidence had been going in pretty well … and so it was an all-or-nothing approach." As to whether he thought he could maintain a self-defense strategy and also pursue a lesser-included offense of second-degree reckless homicide, trial counsel testified that "[o]f course you could," but whether that was a good strategy is "another issue." Thus, trial counsel made a strategic decision to continue with the all-or-nothing approach based on his assessment that "the evidence had been going in pretty well." *See State v. Ambuehl*, 145 Wis. 2d 343, 356, 425 N.W.2d 649 (Ct. App. 1988) (recognizing that "a less serious option to consider" is not a "true alternative"). We will not second-guess trial counsel's strategy, given his assessment of the evidence at trial and his discussions with Johnson. "[T]he decision of whether to request a lesser-included offense instruction is a complicated one involving legal expertise and trial strategy." *See Eckert*, 203 Wis. 2d at 509. Indeed, as this court has previously stated, "[p]rudent counsel could decide not to seek such an instruction for fear of the jury's possible reaction to it." *Ambuehl*, 145 Wis. 2d at 357.

¶32 Consequently, we conclude that Johnson did not receive ineffective assistance of counsel when trial counsel did not request a jury instruction for the lesser-included offense of second-degree reckless homicide.

### III. Failure to Request the Self-Defense Instruction for Criminally Reckless Conduct

¶33 Johnson additionally argues that he received ineffective assistance of counsel because his trial counsel requested the wrong self-defense instruction. Prior to trial, trial counsel requested WIS JI—CRIMINAL 805, the self-defense instruction for intentional homicide. However, because Johnson was charged with first-degree reckless homicide, Johnson argues that his trial counsel should have

requested WIS JI—CRIMINAL 801, the jury instruction that specifically applies to self-defense for crimes involving criminally reckless conduct.

¶34    We conclude that Johnson suffered no prejudice because the jury was provided with an instruction on self-defense—which was substantially similar to WIS JI—CRIMINAL 801—and the jury was thoroughly presented with a self-defense theory of the case. Thus, there is no reasonable probability of a different outcome had the jury received a different instruction on self-defense.[9]

¶35    To show prejudice, Johnson is required to show that there is a reasonable probability of a different outcome had the jury been instructed with what Johnson asserts is the correct jury instruction on self-defense for a charge of first-degree reckless conduct. *See Erickson*, 227 Wis. 2d at 769. However, in spite of trial counsel's failure to request WIS JI—CRIMINAL 801, the jury was nevertheless clearly presented with a theory of self-defense. Johnson testified that he believed he was defending himself when he shot Daniels, trial counsel argued in closing that this case was all about whether Johnson acted in self-defense, and the State argued that this case came down to whether the jury believed Johnson's testimony about the encounter with Daniels outside the gas station.

¶36    Importantly, the jury heard extensive testimony from Daniels's girlfriend and Johnson about the Facebook messages that the two men had

---

[9] Johnson emphasizes that the postconviction court found that trial counsel's performance was deficient and that the State conceded that trial counsel's performance was deficient; therefore, the issue is whether Johnson was prejudiced. We resolve Johnson's argument on the basis of prejudice, and therefore, we do not address trial counsel's performance. *See State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990). Nevertheless, we observe that we review the issue of deficient performance independently of the postconviction court. *See State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.

exchanged that ranged from insulting to threatening. Trial counsel also played the voice messages that Daniels left for Johnson in which Daniels threatened to kill Johnson, and introduced a picture of Daniels holding a gun with an extended magazine that Daniels sent to Johnson as a threat. The jury further heard testimony from both Daniels's girlfriend and Johnson that Daniels initiated the argument that night at the gas station and testimony from the gas station employee that Daniels pointed at Johnson's head.[10]

¶37 Despite having heard this evidence about Daniels's threatening conduct, the jury rejected Johnson's theory of self-defense. As the State observed, and we agree, this case amounted to a credibility determination where the jury was required to choose if it believed Johnson's testimony in which Johnson claimed Daniels was armed that night at the gas station, or if it believed the testimony from Daniels's girlfriend and the gas station employee that Daniels was not armed. A different jury instruction on self-defense—which is substantially similar to the one that was given—would not have changed whether the jury believed Johnson's testimony.

¶38 At Johnson's trial, the jury was instructed on the same elements of self-defense contained in WIS JI—CRIMINAL 801. The jury was also instructed to consider whether Johnson acted in self-defense in relation to the elements of first-degree reckless homicide, similar to the instruction in WIS JI—CRIMINAL 801:

> If you are satisfied beyond a reasonable doubt that all three elements of first[-]degree reckless homicide have been proved and the defendant did not act lawfully in self-

---

[10] One of the investigating officers testified that the gas station employee provided a statement that Johnson poked Daniels in the head. However, the employee testified that the officer was mistaken, and he testified that he saw Daniels point at Johnson's head.

> defense, you should find the defendant guilty. If you are not so satisfied, you must find the defendant not guilty.

Overall, the instruction provided an accurate statement of the law and is substantially similar to the instruction Johnson contends should have been given. *See **State v. Langlois***, 2018 WI 73, ¶38, 382 Wis. 2d 414, 913 N.W.2d 812 (stating that a jury instruction is reviewed as a whole to determine whether the overall meaning is an accurate statement of the law). Thus, we conclude that there is no reasonable probability of a different outcome had WIS JI—CRIMINAL 801 been given, as Johnson contends.

¶39    Accordingly, in light of the testimony given at trial, arguments by the State and trial counsel, and the instruction that was provided to the jury, we conclude that Johnson suffered no prejudice, and we reject his second claim of ineffective assistance of counsel.

### IV.    Interest of Justice

¶40    Johnson last argues that he is entitled to a new trial in the interest of justice. We disagree.

¶41    Pursuant to WIS. STAT. § 752.35 (2019-20),[11] "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried," we may reverse the judgment or order appealed from, "regardless of whether the proper motion or objection appears in the record." A miscarriage of justice may be found when there is "a probability of a different result on retrial such that a new trial in the interest of justice is

---

[11] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

warranted." *See* ***State v. Kucharski***, 2015 WI 64, ¶46, 363 Wis. 2d 658, 866 N.W.2d 697. "The power to grant a new trial when it appears the real controversy has not been fully tried 'is formidable, and should be exercised sparingly and with great caution.'" ***State v. Sugden***, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted). We only exercise our power to grant a discretionary reversal in exceptional cases. ***Id.***

¶42     In short, this is not an exceptional case in which the record suggests that the real controversy has not been fully tried or there was any miscarriage of justice. We, therefore, decline to exercise our power to grant a new trial in this case.

## CONCLUSION

¶43     In sum, we conclude that Johnson did not receive ineffective assistance of counsel and he is not entitled to a new trial in the interest of justice. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17