PER CURIAM.
¶ 1 Shawn Joseph Brown-Troop appeals from a judgment, entered upon a jury's verdicts, convicting him on two counts of armed robbery with the threat of force as a party to a crime. Brown-Troop also appeals from an order that denied his postconviction motion without a hearing. Brown-Troop alleges multiple instances of ineffective assistance from trial counsel and he claims the trial court erred when it denied his request for a new lawyer on the first day of trial. We conclude that trial counsel was not ineffective in his representation of Brown-Troop and that the trial court properly exercised its discretion relative to his request for new counsel and an evidentiary hearing. We therefore affirm the judgment and order.
BACKGROUND
¶ 2 Around 8:20 p.m. on September 25, 2015, a GameStop store in Greenfield was robbed. Three masked robbers entered the store; the first had white shoes and a gun. One employee, S.B., was ordered to sit on the floor while the armed robber took her boss, E.L., into a back room where merchandise was stored. While E.L. was in the back, the other two robbers took S.B.'s keys and cell phone from her, then dragged her by her hair to a cash register and ordered her to open it. The robbers took cash and merchandise and fled the store. Neither S.B. nor E.L. could identify any of the robbers.
¶ 3 Meanwhile, the manager of a nearby Outback Steakhouse restaurant stepped outside for a cigarette sometime between 8 and 8:30 p.m. He noticed a suspicious vehicle turn off its headlights and back into a parking stall in a neighboring lot. The manager called police, and Greenfield Police Officer Sean Doonan was dispatched to investigate. While he was on his way to the restaurant, Doonan heard the report about the GameStop robbery. Doonan believed there was a "high probability" the calls were related because the two locations were about a block apart. Doonan activated his lights and siren.
¶ 4 The restaurant manager spotted law enforcement vehicles headed toward the GameStop and noticed that the suspicious vehicle "peeled out" of its stall. The manager also saw someone jump into a dumpster. When Doonan arrived, the manager reported what he had observed, stating those events had happened five to thirty seconds before the officer had arrived. The manager further noted that the man in the dumpster had been running to the north and east-in other words, he was coming from the direction of GameStop.
¶ 5 Doonan investigated the dumpster and found Brown-Troop standing behind it. Doonan ordered him out at gunpoint. Although it was only sixty degrees outside, Brown-Troop was sweating profusely through his t-shirt. Brown-Troop was handcuffed. He told police he had been behind the dumpster to urinate. When Doonan searched Brown-Troop, he found $126 crumpled up in Brown-Troop's front pants pocket. His white shoes were later collected by police.
¶ 6 Around the time of the robbery, a Milwaukee County bus driver was on a layover on South 74th Street behind a Petco store, just north of the GameStop. While standing outside his bus for his break, he watched three men climb a wall and run northbound, away from the area of the GameStop. He heard one man say "hurry up" and observed that they were all wearing black or dark clothing, and at least one of them wore something with a hood.
¶ 7 Greendale Police Officer Anthony Fitzgerald and his K-9 partner, Nova, were dispatched to the robbery around 8:30 p.m. Fitzgerald spoke to the bus driver, who reported what he had seen, then spoke to other officers, who said they were setting up a perimeter. Fitzgerald then used Nova to search for evidence, as Nova is purportedly able to track "fresh human scent." They started near where the bus driver had seen the three men. Nova located crumpled cash in a nearby business parking lot, a black hooded sweatshirt in some bushes, and a revolver fifteen to twenty feet from the sweatshirt. DNA on the sweatshirt was later matched to Brown-Troop. Brown-Troop was thus charged with two counts of armed robbery with the threat of force as a party to a crime.
¶ 8 At a final pretrial hearing on March 28, 2016, Brown-Troop requested a new attorney, stating that trial counsel had not shared evidence with him, including a video of the robbery. The State, temporarily represented by a substitute assistant district attorney, said she had not seen such a video in the file. Trial counsel believed that Brown-Troop was asking about a different video and told the trial court he would be happy to show it to Brown-Troop. Upon that reassurance, Brown-Troop told the court his concerns were resolved.
¶ 9 Two weeks later, on the first day of trial, Brown-Troop again requested a new attorney. He told the trial court that he disagreed with counsel's recommendation to plead guilty and stated that he had not yet seen the video of the robbery. The court explained that it was counsel's duty to advise Brown-Troop of what he thought was the best course of action, but Brown-Troop could choose to follow that advice or not, so that disagreement was not grounds for a new attorney. After some discussion, the trial court granted a recess and returned to chambers for ten to fifteen minutes to allow Brown-Troop and counsel to watch and discuss the robbery video. When the recess ended, the court asked if there was anything else to discuss, and counsel said no. Brown-Troop did not personally attempt to renew his objection to counsel. The jury was brought in and trial began. The jury subsequently convicted Brown-Troop on both counts, and the court imposed concurrent sentences of thirteen years' initial confinement and ten years' extended supervision on each count.
¶ 10 Brown-Troop filed a postconviction motion seeking a new trial. He argued trial counsel had been ineffective in multiple ways. He also claimed the trial court erred when it denied his request for a new attorney. The court denied the motion without a hearing. Brown-Troop appeals. Additional facts will be discussed herein as necessary.
DISCUSSION
¶ 11 "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." State v. Allen , 2004 WI 106, ¶ 14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the motion alleges such facts is a question of law. See id. , ¶ 9. If the motion raises sufficient material facts, the trial court must hold a hearing. See id. If the motion does not raise sufficient material facts, if the motion presents only conclusory allegations, or if the record conclusively shows the defendant is not entitled to relief, then the decision to grant or deny a hearing is left to the trial court's discretion. See id.
¶ 12 The trial court has the discretion to deny "even a properly pled motion ... without holding an evidentiary hearing if the record conclusively demonstrates that the defendant is not entitled to relief." See State v. Sulla , 2016 WI 46, ¶ 30, 369 Wis. 2d 225, 880 N.W.2d 659. A trial court's discretionary decisions are reviewed for an erroneous exercise of that discretion, a deferential standard. See id. , ¶23. Our review is limited to the four corners of the postconviction motion, not additional arguments raised in the appellant's brief. See Allen , 274 Wis. 2d 568, ¶ 27.
I. Ineffective Assistance of Trial Counsel
¶ 13 To prevail on an ineffective assistance claim, the defendant must show both that counsel was deficient and that the deficiency was prejudicial. See State v. Erickson , 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). To show deficient performance, "the defendant must identify specific acts or omissions ... that fall 'outside the wide range of professionally competent assistance.' " See State v. Taylor , 2004 WI App 81, ¶ 13, 272 Wis. 2d 642, 679 N.W.2d 893 (citation omitted). The test for prejudice is "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " State v. Balliette , 2011 WI 79, ¶ 24, 336 Wis. 2d 358, 805 N.W.2d 334 (citation omitted). Claims of ineffective assistance of counsel present mixed questions of fact and law. See State v. Thiel , 2003 WI 111, ¶ 21, 264 Wis. 2d 571, 665 N.W.2d 305. We uphold a trial court's findings of fact unless they are clearly erroneous, but whether those facts show that counsel was ineffective is a question of law. See id.
¶ 14 A defendant must satisfy both prongs of the ineffective assistance test; we need not address both if the defendant fails to make a sufficient showing on one. See State v. Maloney , 2005 WI 74, ¶ 14, 281 Wis. 2d 595, 698 N.W.2d 583. We additionally note that, when it comes to reviewing an attorney's performance, there is a strong presumption that counsel's conduct is reasonable. See State v. Carter , 2010 WI 40, ¶ 22, 324 Wis. 2d 640, 782 N.W.2d 695. An attorney's performance "need not be perfect, nor even very good, to be constitutionally adequate." See id.
A. Motion to Suppress Based on Warrantless Arrest
¶ 15 Brown-Troop first complains that trial counsel was ineffective for failing to file a suppression motion that would have challenged his warrantless arrest as unlawful and lacking probable cause. Had counsel done so, Brown-Troop believes that he would have prevailed on the motion, resulting in suppression of the cash found on Brown-Troop, Brown-Troop's statement about why he was behind the dumpster, any observations about Brown-Troop-i.e. , that he was sweating profusely in cool weather-made while he was in custody, the clothes[1] confiscated from Brown-Troop following his arrest, and Brown-Troop's shoes or photos thereof, taken because they purportedly were similar to the shoes of the first robber on the video.
¶ 16 "A warrantless arrest is not lawful except when supported by probable cause." State v. Lange , 2009 WI 49, ¶ 19, 317 Wis. 2d 383, 766 N.W.2d 551. "Probable cause to arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime." State v. Secrist , 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). Probable cause is assessed case by case, looking at the totality of the circumstances. See Lange , 317 Wis. 2d 383, ¶ 20. "Probable cause is a flexible, commonsense measure of the plausibility of particular conclusions about human behavior." State v. Kutz , 2003 WI App 205, ¶11, 267 Wis. 2d 531, 671 N.W.2d 660. "There must be more than a possibility or suspicion that the defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." Secrist , 224 Wis. 2d at 212. When the facts are undisputed, we determine whether probable cause to arrest exists as a matter of law. See Lange , 317 Wis. 2d 383, ¶ 20.
¶ 17 We are satisfied that the record reflects probable cause to arrest Brown-Troop without a warrant. Doonan had been dispatched to a suspicious vehicle call; while enroute, there was a new dispatch for an armed robbery of a store that was an approximate two-minute walk from the location identified in the suspicious vehicle call. Doonan plausibly inferred there was a "high probability" the calls were related. He arrived at the restaurant approximately seven minutes after the suspicious vehicle dispatch, and two minutes after the robbery call. The restaurant manager reported the vehicle had left but he had observed a man run from the direction of the GameStop and jump into the dumpster. Doonan then located Brown-Troop behind the dumpster. Based on the totality of the circumstances-notably, the coinciding of timing and location-the record shows sufficient probable cause to arrest Brown-Troop for suspicion of armed robbery.[2]
¶ 18 Brown-Troop nevertheless complains probable cause was lacking because police did not know the direction in which the robbers had fled nor their descriptions. However, probable cause is based on what officers know, not on what they do not know. See, e.g. , Kutz , 267 Wis. 2d 531, ¶ 11 (probable cause is based on circumstances within the arresting officer's knowledge). Brown-Troop also complains that probable cause was lacking because he was not dressed suspiciously, was not carrying stolen merchandise, and cooperated with officers. But police are not required to draw a reasonable inference that favors innocence when there is also a reasonable inference supporting probable cause. See State v. Nieves , 2007 WI App 189, ¶ 14, 304 Wis. 2d 182, 738 N.W.2d 125.
¶ 19 Brown-Troop further contends that two cases support his argument that probable cause is lacking. First, he cites to State v. Eckert , 203 Wis. 2d 497, 553 N.W.2d 539 (Ct. App. 1996), which Brown-Troop considers "[t]he closest case on point[.]" In Eckert , the trial court concluded police had probable cause to arrest Eckert based on his similarity to a description of the suspect, as well as "temporal and geographic proximity" to the scene, early on a Saturday morning when streets were generally quiet, and we affirmed. See id. at 518-21. Brown-Troop argues that in his case, there was no evidence that he matched any description and his presence in a "busy commercial district" makes his presence "much less suggestive."
¶ 20 We reject this argument: even if the area in which Brown-Troop was found were busier than that in Eckert , we think it self-evident that generally, one does not casually lounge about behind a dumpster in a private business's lot. Moreover, while the suspects in Eckert supposedly fled south from the crime scene, Eckert had been found north of it. See id. at 521. In this case, by contrast, a witness observed Brown-Troop run from the location of the crime to the dumpster. Eckert therefore does not defeat probable cause in this case.
¶ 21 Second, Brown-Troop cites to State v. Nawrocki , 2008 WI App 23, 308 Wis. 2d 227, 746 N.W.2d 509. There, multiple suspects robbed a victim and fled. See id. , ¶ 5. Police obtained a general description and the direction of the suspects' movement and stopped two men walking in the area who were wearing shirts matching the description of the suspects' clothing. See id. , ¶¶ 7-8. One of the men-Nawrocki-was not cooperative with the police. See id. , ¶¶ 8-10. Brown-Troop notes that in Nawrocki , the State conceded there was no probable cause to arrest Nawrocki, and that unlike Nawrocki, he cooperated with the police.
¶ 22 Nawrocki was not a probable cause case. The question was whether a show-up identification procedure was necessary and the evidence therefrom admissible. See id. , ¶ 2. In order for a show-up to be necessary, however, police must lack probable cause. See id. , ¶ 2; see also State v. Dubose , 2005 WI 126, ¶33, 285 Wis. 2d 143, 699 N.W.2d 582. The State's concession in Nawrocki does not inform on the probable cause analysis in this case.
¶ 23 In short, we are satisfied that the record in this case conclusively demonstrates the existence of probable cause for police to arrest Brown-Troop without a warrant. See Sulla , 369 Wis. 2d 225, ¶ 30 ; Allen , 274 Wis. 2d 568, ¶ 9. A motion to suppress claiming an unlawful warrantless arrest would therefore have failed. Counsel is not deficient for failing to pursue a meritless motion. See State v. Wheat , 2002 WI App 153, ¶ 23, 256 Wis. 2d 270, 647 N.W.2d 441.
B. Motion to Suppress Based on an Unlawful Search
¶ 24 "If an arrest is invalid, a search incidental to that arrest is also invalid[.]" State v. Paszek , 50 Wis. 2d 619, 625, 184 N.W.2d 836 (1971). Believing his warrantless arrest was unlawful, Brown-Troop argues that trial counsel should have moved to suppress evidence from the search incident to his arrest. As noted above, that evidence included the cash from Brown-Troop's pockets, his statement about why he was behind the dumpster, any "observations" about Brown-Troop made while he was in custody, his clothes, and his shoes.
¶ 25 However, "a warrantless search of a person incident to a lawful arrest does not violate constitutional search and seizure provisions." State v. Sykes , 2005 WI 48, ¶ 14, 279 Wis. 2d 742, 695 N.W.2d 277. Because Brown-Troop's arrest was a lawful arrest supported by probable cause, any search incident to that arrest was also lawful. Trial counsel was not deficient for failing to challenge a search incident to a lawful arrest. See Wheat , 256 Wis. 2d 270, ¶ 23.
C. Motion to Suppress Brown-Troop's Statement
¶ 26 Brown-Troop next contends that trial counsel was ineffective for not moving to suppress his statement that he was behind the dumpster to urinate. He contends that the statement was made in response to a question seeking incriminating information while he was "indisputably" in custody[3] and without the benefit of any warnings under Miranda v. Arizona , 384 U.S. 436 (1966). We will assume without deciding that Brown-Troop was in custody and subject to interrogation as defined for Miranda purposes; it is well-established that the State may not use statements stemming from the custodial interrogation of a defendant unless he is given proper warnings about his rights. See id. at 444 ; see also State v. Martin , 2012 WI 96, ¶¶ 31, 34-36, 343 Wis. 2d 278, 816 N.W.2d 270. This suggests a suppression motion could be meritorious, and that counsel was deficient for failing to file such a motion.
¶ 27 The State contends that trial counsel was not deficient because he could have determined that the trial court would have denied the suppression motion under an exception to Miranda . Specifically, Miranda exempts general, on-scene interrogation if the person being questioned is not in custody or if law enforcement "urgently needs information to attend to a potential emergency." Martin , 343 Wis. 2d 278, ¶ 37. The State argues that counsel might have concluded police needed information to address an emergency-specifically, that a robber or a witness was hiding-and Brown-Troop's information "could have helped police catch the men who had just committed an armed robbery." But this argument is specious at best because it implies that there is an emergency justifying a Miranda violation whenever police respond after a crime has been committed. We do not believe the on-scene interrogation exception is so broad.
¶ 28 The State also contends that trial counsel could have reasonably thought that a Miranda suppression motion was "pointless" because actually hiding behind the dumpster is inculpatory, so a reasonable defense attorney would want a jury to hear Brown-Troop's innocent explanation for being there. If, however, the issue is the one of whether counsel's trial strategy was reasonable, "it is the better rule, and in the client's best interests, to require trial counsel to explain the reasons underlying his handling of a case." State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). Thus, trial counsel may have been deficient for failing to file a motion to suppress Brown-Troop's statement.
¶ 29 However, a claim of ineffective assistance requires the defendant to show both deficient performance and prejudice therefrom, and Brown-Troop has failed to adequately allege or demonstrate prejudice from trial counsel's failure to seek to suppress the admission of Brown-Troop's statement at trial.
¶ 30 In the postconviction motion, Brown-Troop alleged that "the State elicited testimony ... that Mr. Brown-Troop had told police ... that he had stepped behind the dumpster to urinate. The State elicited this testimony as consciousness of guilt, inferring that Mr. Brown-Troop was lying about why he was behind the dumpster." The State also used the statement "on cross-examination to undercut his credibility." Brown-Troop asserted that excluding his statement "would have made a difference: Mr. Brown-Troop's credibility would not be attacked and the State would not be able to argue, in its closing argument, that this was an inconsistency supporting its conclusion that he was in flight from a robbery." In a footnote in the appellant's brief, Brown-Troop argues that he had "little choice but to ratify the statements in his direct examination" because the State had already used his statement against him in its case-in-chief.[4]
¶ 31 First, we are not persuaded by Brown-Troop's claim that the State used this statement to show "consciousness of guilt"-though the State may have used the statement to support its belief that Brown-Troop was lying, it is not entirely clear what makes the statement an inconsistency: Brown-Troop appears to have consistently maintained that he was behind the dumpster to urinate.
¶ 32 More significantly, though, Brown-Troop testified in his own defense, telling the jury that he was in the area to sell marijuana and Xanax before meeting his girlfriend at Southridge Mall. He fled when he heard police sirens, not knowing whether his buyer "was police or not," and he ran to the dumpster because he was nervous and "really needing to urinate" and "didn't know what was going on." But Brown-Troop does not claim that he would not have testified had his statement been suppressed, nor does he allege that his testimony would have been significantly different. Consequently, even if he only testified that he was in the area to sell drugs, his statement would have been admissible on cross-examination to undermine that testimony. Thus, we are unpersuaded that the postconviction motion alleged sufficient material facts to show a reasonable probability of a different result at trial had counsel successfully moved to suppress Brown-Troop's non-Mirandized statement.[5] Prejudice has not been shown.
D. Dog Tracking Issues
¶ 33 Brown-Troop raises several ineffective-assistance claims relating to the use of the K-9, Nova. Nova was brought to the scene by Greendale Police Officer Fitzgerald to try to track the path of the robbery suspects.
1. Failure to Object to Admission of Dog-Tracking Evidence
¶ 34 Brown-Troop first assails dog-tracking evidence generally as "quasi-scientific evidence" that is fallible and unreliable. He contends that "[r]easonably competent legal professionals practicing criminal defense work" should be aware of the ongoing scrutiny of such evidence and the corresponding legal challenges that can be brought. Believing Fitzgerald should not have been allowed to talk about the quasi-science of dog tracking, Brown-Troop then contends that trial counsel should have moved to exclude evidence obtained from Nova's tracking-the cash from the parking lot, the sweatshirt with Brown-Troop's DNA, and the gun-for a lack of evidentiary foundation.
¶ 35 First, we note that the law regarding admission of dog-tracking evidence is not settled, and an attorney is not deficient for failing to raise an unsettled point of law. See State v. Jackson , 2011 WI App 63, ¶ 10, 333 Wis. 2d 665, 799 N.W.2d 461. Brown-Troop counters that the issue is not unsettled because it is one of "well settled evidentiary rules" and not "untested legal concepts." However, he undercuts this argument by asking us to adopt a "foundational inquiry for substantive evidence" from a similar but not fully on-point case.[6]
¶ 36 Second, we do not think it is necessary to settle the admissibility of dog-tracking evidence here because testimony about the mechanics of how Nova tracks people was ultimately not necessary for establishing an evidentiary foundation for the cash, sweatshirt, or gun. Consequently, there would be no basis for excluding it because of a lack of foundation.
¶ 37 "Generally, in the admission of articles associated with an offense, some connection or link between the article, the defendant, and the crime must be established." Wold v. State , 57 Wis. 2d 344, 352, 204 N.W.2d 482 (1973). Brown-Troop believes the connection was established here by testimony about Nova's tracking, which he says "rests on an assumption that the scent the dog smelled was that of the robber or robbers." In fact, that was not the assumption. Fitzgerald explained that Nova is trained to follow only the "freshest human scent," not a particular person's scent.
¶ 38 Moreover, testimony about the mechanics of Nova's tracking is not necessary to lay a proper foundation in this case, so the evidence in question could have been admitted without such testimony. Officers had set up a perimeter. They began searching along the flight path of the three men who had been observed by the bus driver. While searching along that path, police found cash, a hooded sweatshirt, and a gun. These items are linked to the crime because the victims reported this was an armed robbery with a gun, the video showed at least one of the robbers in a black hoodie, and cash was taken in the robbery; the bus driver also reported that at least one of the men he saw was wearing something with a hood. The hooded sweatshirt is directly linked to Brown-Troop by DNA. The gun and cash are circumstantially linked to Brown-Troop-the gun because it was found in the same bushes as the sweatshirt, and the cash because it was crumpled similarly to the crumpled cash in Brown-Troop's pocket. The strength of these connections might impact the weight a jury would give to the evidence, but it does not adversely affect foundation or admissibility in this case.
¶ 39 In short, we are not persuaded that trial counsel was ineffective for failing to object to the dog-tracking evidence generally, as the law is unsettled. Nor are we persuaded that there was prejudice, as the physical evidence was admissible without discussing the mechanics of Nova's tracking.
2. Failure to Raise a Daubert Objection to Fitzgerald's Testimony
¶ 40 Brown-Troop also asserts that trial counsel should have raised a Daubert challenge to foreclose Fitzgerald's "expert" testimony about Nova's tracking. See Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579 (1993). Under Daubert , the trial court has a "gate-keeper function," meant to ensure that an "expert's opinion is based on a reliable foundation and is relevant to the material issues" and "to prevent the jury from hearing conjecture dressed up in the guise of expert opinion." See State v. Giese , 2014 WI App 92, ¶¶18-19, 356 Wis. 2d 796, 854 N.W.2d 687. The Daubert rule is codified in WIS. STAT. § 907.02(1) (2015-16):
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.
¶ 41 Neither party cites to a Wisconsin case involving dog-tracking evidence, and the out-of-state cases cited reach varying conclusions on the admissibility of dog-tracking evidence and whether Daubert even applies to such evidence. Cf. Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Foote , 14 S.W.3d 512, 520 (Ark. 2000) (testimony about K-9's ability to detect fire accelerant inadmissible under Daubert because there was "no evidence that this scientific theory had ever been tested or subjected to peer review, or that it had been otherwise embraced by the particular scientific community") with California v. Jackson , 376 P.3d 528, 566 (Cal. 2016) ("Scent trailing evidence is not so foreign to everyday experience that it would be unusually difficult for jurors to evaluate.... It is also unlikely that a juror would believe that dogs are scientifically infallible[.]"). Again, where the law is unsettled, counsel is not deficient for failing to raise an issue. See Jackson , 333 Wis. 2d 665, ¶ 10.
¶ 42 But here, too, we also discern no prejudice, even if there was deficient performance. It is not reasonable to believe that any testimony about how Nova supposedly tracks is what led the jury to convict Brown-Troop. Rather, the physical evidence, particularly the DNA on the hooded sweatshirt, plus the circumstantial eyewitness testimony from the restaurant manager and bus driver strongly support the conviction. Even if Fitzgerald had been precluded from testifying specifically about how Nova supposedly tracks, he still could have testified that Nova was brought to the scene and located cash, the sweatshirt, and the gun. That is, Fitzgerald was an eyewitness to Nova's actions who could testify about Nova's actions without also testifying about how or why Nova retrieved those particular items. See $7,058.84 in U.S. Currency v. Texas , 30 S.W.3d 580, 585 (Tex. App. 2000) (officer not allowed to testify about how dogs detect narcotics but the challenged testimony "was not expert testimony, but was merely eyewitness testimony of what the dog did when brought" to the scene). Consequently, the record reveals no basis for relief based on trial counsel's failure to raise a Daubert challenge to Fitzgerald's testimony.
3. Failure to More Effectively Cross-Examine Fitzgerald
¶ 43 Brown-Troop also argues that his trial attorney should have done a better job of cross-examining Fitzgerald to highlight the weaknesses of the dog-tracking evidence. Specifically, Brown-Troop alleged:
Trial counsel could have easily displayed the shortcomings of this evidence to the jury by more thoroughly cross-examining the dog's handler. Trial counsel should have cross-examined the handler about:
• The numerous alleged "false positives" outlined in the police reports ... and in the officer's own testimony;
• The stated historical problems with this evidence, described above;
• The numerous obstacles to reliability in this case, including the time-lag before the sniff was conducted and the weakness of the alleged perimeter.
Trial counsel did no such thing. This is constitutionally cognizable deficient performance which prejudiced Mr. Brown-Troop for the reasons outlined above.
¶ 44 The above-quoted section is the extent of the postconviction motion's pleading. However, " '[a] defendant who alleges that counsel was ineffective by failing to take certain steps must show with specificity what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding.' " State v. Prescott , 2012 WI App 136, ¶ 11, 345 Wis. 2d 313, 825 N.W.2d 515 (citation omitted); see also State v. Arredondo , 2004 WI App 7, ¶ 40, 269 Wis. 2d 369, 674 N.W.2d 647 (2003) ("When a defendant claims that trial counsel was deficient for failing to present testimony, the defendant must allege with specificity what the particular witness would have said if called to testify."). Therefore, the claim that trial counsel was ineffective for not more effectively cross-examining Fitzgerald is conclusory and any claim of prejudice is speculative. Relief is not warranted on this ground.
E. Summation
¶ 45 In sum, we conclude that Brown-Troop's postconviction motion fails to allege sufficient material facts to entitle him to relief, or the record otherwise demonstrates he is not entitled to relief on his claims. A hearing on the motion was therefore not a requirement but a matter of discretion for the trial court. Allen , 274 Wis. 2d 568, ¶ 9. Brown-Troop has not shown the trial court erroneously exercised its discretion in denying a hearing.
II. Request for New Counsel
¶ 46 Finally, Brown-Troop complains that the trial court erroneously exercised its discretion when it denied his request for a new attorney. He contends that he "had numerous issues with counsel that frustrated his ability to properly prepare a defense" because of his inability to access video of the robbery and because he wanted counsel to "file a meritorious motion to suppress evidence," which counsel did not do even after Brown-Troop filed such a motion pro se .[7]
¶ 47 "Whether trial counsel should be relieved and a new attorney appointed is a matter within the [trial] court's discretion." State v. Jones , 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378. A reviewing court considers a number of factors including:
(1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.
State v. Lomax , 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988).
¶ 48 Brown-Troop actually requested a new lawyer twice-once at the final pretrial hearing on March 28, 2016, and again on the first day of trial on April 11, 2016. The first time, Brown-Troop claimed that he thought counsel had withheld evidence-namely, the robbery video-but also some transcripts. Counsel reported that he thought Brown-Troop was referring to a video relating to a fleeing charge and told the trial court that he was happy to show Brown-Troop the video and provide a copy of the preliminary hearing transcript. According to the final pretrial hearing transcript, it appears that, once counsel offered the video and the preliminary hearing transcript, everyone including Brown-Troop considered the main issue with counsel to have been resolved. We therefore do not discuss the March 28, 2016 request for new counsel any further.[8]
¶ 49 On the trial date, counsel again indicated that Brown-Troop wanted him to move to withdraw. The trial court asked Brown-Troop to explain why. Brown-Troop explained that he had not seen "the evidence of the armed robbery video, the fleeing video" and he felt counsel was giving him "wrong advice about the government" and was "not in my best interest of me and my family." The trial court asked Brown-Troop why he thought counsel's advice was wrong. Brown-Troop explained, "I feel like he wants me to plea out to a charge that I'm not guilty of.... I feel like I should have somebody else ... representing me because my freedom is in his hands." The court acknowledged Brown-Troop's reason, but explained that it is a lawyer's job to make a recommendation based on "an exercise of professional analysis, professional judgment[,]" and the client then chooses whether to follow the recommendation. If the client does not want to follow the recommendation, "[t]hat's okay. But that's not a sign that he's doing something that's against your best interest."
¶ 50 The trial court then addressed the video issue. It stated it believed there would be "ample time" for Brown-Troop to view the videos with counsel at the end of the day. Counsel explained that he had informed Brown-Troop that morning that they could request an adjournment, but Brown-Troop, who had previously invoked his speedy-trial right, "informed me this morning that he didn't want me to do that. He wants to go to trial[.]"
¶ 51 Because there was a delay in having potential jurors sent to the courtroom, the trial court offered the television and video device in the courtroom. Brown-Troop then interjected, reminding the court that at the prior hearing, the State had said there was no video, so Brown-Troop said he was "kind of confused on that." The trial court did not recall the hearing, but explained that sometimes people make mistakes and if there was a video, it wanted to make sure Brown-Troop had time to see it before starting the trial. When Brown-Troop inquired whether he would be able to get a new attorney, the court answered:
It is very unlikely that I'm going to grant your request to have a new lawyer and that's because of the timing of when your request was made and because of the different issues that you explained to me. It doesn't really sound like there's a good reason to do that.... [L]awyers in general have to give their [clients] advice that their clients may not like. I understand that, but just that fact by itself is not enough for me to make your request to let him withdraw.
Additionally, if the issue was surrounded in watching the videotape, you will be able to do that and discuss it.... I think the two of you can get together and you'll be able to discuss this case and effectively present your defense. So we can talk more about whether or not you can have another lawyer in a few minutes, but I'm just letting you know because of the timing and because of the reason you raised it, I'm very unlikely to grant the motion.
¶ 52 The trial court then took a recess and returned to chambers so Brown-Troop could watch the video with counsel. When the court went back on the record, it asked counsel, "was there anything else that we needed to address before we bring the jury up[?]" Counsel responded, "I don't think so, Your Honor," and proceedings resumed.
¶ 53 Brown-Troop complains that the trial court should have made "a more serious inquiry into the issue of representation." He further complains that the court did not examine him "about his wishes regarding the choice between an adjournment and a new lawyer and appears to have privileged his statutory speedy trial right over his request for new counsel." Brown-Troop further contends he raised the issue of representation "early and often" and that the breakdown prong "is satisfied by these circumstances," including trial counsel's failure to file a suppression motion as Brown-Troop requested.[9] We disagree.
¶ 54 The trial court's inquiry into Brown-Troop's reasons for seeking new counsel was adequate. It ascertained that Brown-Troop's complaints at the time were two-fold: first, Brown-Troop did not appreciate trial counsel's recommendation for a guilty plea, and second, counsel had not yet shown him any videos. Brown-Troop provides no authority for his contention that the trial court should have engaged him in a discussion-and, in effect, counseled him-about the interplay of his speedy-trial right and the right to counsel.
¶ 55 With respect to timing, "the definition of 'timely' will ... depend on the circumstances." Jones , 326 Wis. 2d 380, ¶ 30. But Brown-Troop's claim that he raised the issue about counsel "early and often" is conclusory. That is, he alleges no details about the case that would allow a court to conclude he had raised the issue early or often in the context of the entirety of the proceedings.
¶ 56 Finally, the trial court was not persuaded that any conflict between Brown-Troop and counsel "was so great that it likely resulted in a total lack of communication that prevented an adequate defense." As the court noted, it is trial counsel's responsibility to make recommendations to the client on how to proceed: the client may accept or reject that advice. See State v. Provo , 2004 WI App 97, ¶ 17, 272 Wis. 2d 837, 681 N.W.2d 272.
¶ 57 Brown-Troop further complains that trial counsel's failure to show him the robbery video "impacted the integrity of the defense case" because they "never discussed a defense strategy for this piece of evidence and had no opportunity to even consider the importance of this evidence in the overall evidentiary scheme." But Brown-Troop does not allege what the defense strategy would have been had he been able to view the video sooner, nor does he discuss the importance of the video evidence overall, and, we note, the trial court attempted to remedy Brown-Troop's main complaint by allowing him time to watch the video. We are, therefore, unpersuaded that the trial court erroneously exercised its discretion when it refused to discharge and replace trial counsel on the day of trial.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

It is not evident on appeal why Brown-Troop's clothes were collected upon his arrest or the role they may have had in his convictions.

The State additionally points out that Brown-Troop was sweating through his t-shirt. Brown-Troop disputes whether this factor can be included in the probable cause determination because Doonan did not notice it until after he had arrested Brown-Troop. The testimony is unclear on the timing, so we have not considered this factor in the probable cause calculation.

The State disputes Brown-Troop's custodial status at the time of the statement.

Again, however, our review of whether the postconviction motion was sufficient to warrant a hearing is limited to the four corners of the motion itself; we do not incorporate new arguments from the appellant's brief. See State v. Allen , 2004 WI 106, ¶ 27, 274 Wis. 2d 568, 682 N.W.2d 433.

In light of the other evidence adduced in this case, particularly the DNA evidence linking Brown-Troop to the robbery, we also conclude admission of the statement was harmless error. See State v. Martin , 2012 WI 96, ¶¶ 44-46, 343 Wis. 2d 278, 816 N.W.2d 270.

Brown-Troop would have us require threshold inquiries similar to those he says this court required for a finding of probable cause in State v. Miller , 2002 WI App 150, ¶ 12, 256 Wis. 2d 80, 647 N.W.2d 348. In Miller , the question was whether a drug-detecting dog's alert on a car-which was not a search-provided probable cause for a warrantless search of that car and a purse inside. See id. , ¶¶ 10-11. We noted that courts in other jurisdictions have held that a dog's alert provides probable cause for a search if the dog is trained in narcotics detection, the dog has demonstrated a sufficient level of reliability in the past, and the police officer with the dog is familiar with how the dog reacts when it smells contraband. See id. , ¶ 12. We thus concluded that, under the facts of the case, there had been probable cause to search the car and purse. See id. , ¶¶ 13-14.
But Miller presents a slightly different scenario than Brown-Troop's case because of the Fourth Amendment issue of a warrantless search of a vehicle. Here, the police officer searched an open area after a crime was clearly committed. We are unpersuaded that Miller ought to be applied in this particular case.

The motion claimed there was an illegal search and seizure when Brown-Troop was arrested near the dumpster. As explained herein, those claims would not have succeeded.

Brown-Troop understandably laments trial counsel's apparent ignorance, at the final pretrial hearing, of the robbery video's existence, noting that trial counsel did not appear to know about the video even though it was part of discovery and had been referenced in police reports. Nevertheless, based on the information available to the trial court at the time of the final pretrial hearing, the first denial of new counsel was not an erroneous exercise of the trial court's discretion.

Brown-Troop also complains that the trial court did not give a definitive answer on replacement counsel, but he develops no further argument regarding this purported failure. In any event, it is clear that the request was denied, consistent with what the trial court indicated as the likely result before the recess.