COURT OF APPEALS
DECISION
DATED AND FILED

September 7, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1818**

Cir. Ct. No. **2011CF505**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KALEB D. ROSS,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kaleb Ross, pro se, appeals from an order denying his postconviction motion for plea withdrawal based upon newly discovered

evidence. We conclude that Ross is not entitled to relief because the recantation upon which Ross relies was not corroborated by other newly discovered evidence. Accordingly, we affirm.

## BACKGROUND

¶2      The State charged Ross with two counts of sexual assault of a child under sixteen, one count of attempted sexual assault of a child under sixteen, one count of false imprisonment, two counts of disorderly conduct, one count of misdemeanor theft, and one count of being party to the crime of criminal damage to property. The charges arose from substantially similar allegations made by two fourteen-year-old girls, whom we will call "Karen" and "Sarah."[1]

¶3      Karen and Sarah alleged that they met Kaleb Ross, his brother Kyle Ross, and Dustin Widder[2] in a parking lot late at night to retrieve a T-shirt belonging to Karen that was in Kaleb's possession. They asserted that Kaleb forcibly kissed and groped Karen in the parking lot and attempted to remove her clothing and make her touch his penis, while Dustin grabbed Sarah's hips and forcibly sucked on her neck. When the girls broke free and ran away, the three males chased them to the apartment where Sarah lived with her family. Karen was able to get into the apartment first, leaving Sarah alone with the three males in the hallway. Kaleb then groped Sarah's "[c]rotch and boobs" in the hallway while she tried to push him away and told the three males to leave. After Sarah also managed to get inside the apartment and lock the door, someone kicked the door until it cracked and also

---

[1] This matter involves the victims of crimes. Pursuant to WIS. STAT. RULE 809.86(4) (2019-20), we use pseudonyms instead of the victims' names.

[2] Kaleb Ross was seventeen years old at the time of the incident. The complaint does not specify the ages of Kyle or Dustin. For consistency and to avoid confusion between the brothers, we will refer to each of the three males by their first names throughout the remainder of this opinion.

somehow knocked over a microwave that had been stored in the hallway. The three males then fled.

¶4      Karen and Sarah's allegations were partially corroborated by police documentation of the damage to the door; by the statement of Sarah's sister that, when Karen opened the door to let Sarah in, the sister saw Sarah telling Kaleb to "stop" and pushing him away; by the observations of the police that both girls were crying shortly following the incident; by Dustin's statement to police that "[s]omething did happen" but that Dustin was "not gonna snitch on anybody, no matter what"; and by Kaleb's own statements to the presentence investigation report (PSI) author that he, Kyle, and Dustin had met the girls in the parking lot to exchange T-shirts before "hanging out" in the hallway outside Sarah's apartment and that Dustin "was being dumb and kicked the door as they were leaving and they ran out of the building."

¶5      Pursuant to a plea agreement,[3] Kaleb pled no contest to both the sexual assault count involving Sarah and to the party to the crime of criminal damage to property count, and he pled guilty to the disorderly conduct counts. In exchange, the State agreed to defer entry of judgment on the sexual assault count involving Sarah, to recommend the circuit court dismiss the theft count outright, and to dismiss and read in the other three counts, including the sexual assault and attempted sexual assault charges involving Karen. The deferred entry of judgment agreement was later revoked, and the court imposed and stayed a sentence consisting of eight years'

---

[3] The plea agreement also involved another case that is not at issue in this appeal.

initial confinement followed by five years' extended supervision on the sexual assault count and it placed Kaleb on probation for five years.[4]

¶6    Nearly five years after the incident, and three years after the initial plea hearing, Karen went to the Wausau Police Department and recanted her statement. Kaleb moved to withdraw his plea to the sexual assault count involving Sarah based upon Karen's recantation.[5]

¶7    At a hearing on Kaleb's plea withdrawal motion, Karen testified that she and Sarah were in a parking lot with Kaleb, Kyle, and Dustin at about midnight on the night in question, but Karen denied having experienced or witnessed any type of "unwanted" or "assaultive" contact there. Karen also denied that Kaleb had taken her shirt earlier in the day. Karen further testified that the group had gone from the parking lot to the hallway outside the apartment where Sarah was living, where Karen again saw nothing of an "assaultive" nature occur. At some point after Karen went into the apartment while the others remained in the hallway, Karen heard Sarah yelling "stop" through the closed door. Karen said the boys were persistent about coming inside to hang out, but they could not because Sarah's dad was sleeping.

¶8    Karen further testified that after both girls were in the apartment, the microwave being "thrown down the stairs" made a loud noise that awoke Sarah's father. Sarah's father was very upset about the microwave, and Sarah started crying and related a "story" to her father about what Dustin had done to her in the parking

---

[4] Kaleb had served his sentences on the disorderly conduct and property damage counts by that time, and they are not at issue in this appeal.

[5] This was Kaleb's seventh plea withdrawal motion. We discussed the prior six motions in *State v. Ross*, No. 2014AP2509-CRNM, unpublished op. and order (WI App Apr. 14, 2015), and we need not repeat the extensive procedural history related to those motions and Kaleb's no-merit appeal here.

lot. Karen sat in a corner and cried while Sarah was talking to her father, and Karen then "went along" and lied to both Sarah's father and the police about Kaleb "molesting" her. Karen claimed that she created her own detailed lies about Kaleb beyond anything Sarah had alleged because Sarah was her best friend and she did not want to make Sarah "look like a fool or a liar." Karen stated that she did not recant earlier because she was afraid she would get in trouble for lying, but that she finally came forward because her lies had been "haunting" her.

¶9     The circuit court denied the plea withdrawal motion. It concluded that Karen's recantation was not corroborated by a feasible motive for having made a prior false statement or by substantial guarantees of trustworthiness and that it was not material to the count involving Sarah, which had occurred outside of Karen's sight. Kaleb appeals.

## DISCUSSION

¶10     A defendant seeking to withdraw a plea after sentencing on grounds other than a defective plea colloquy must demonstrate by clear and convincing evidence that refusal to allow plea withdrawal would result in a "manifest injustice," raising "serious questions affecting the fundamental integrity of the plea." *State v. Dillard*, 2014 WI 123, ¶83, 358 Wis. 2d 543, 859 N.W.2d 44 (citation omitted). Newly discovered evidence may provide a basis for a manifest injustice claim. *State v. Ferguson*, 2014 WI App 48, ¶24, 354 Wis. 2d 253, 847 N.W.2d 900. A defendant seeking to withdraw a plea after sentencing based upon newly discovered evidence first must demonstrate by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Id.*

¶11    When newly discovered evidence consists of a recantation, the defendant must additionally show that the recantation is corroborated by other newly discovered evidence—such as a feasible motive for the initial false statement combined with circumstantial guarantees of the trustworthiness of the recantation. *Id.,* ¶¶24-25; *see also* **State v. McAlister**, 2018 WI 34, ¶33, 380 Wis. 2d 684, 911 N.W.2d 77 (recognizing that recantations are inherently unreliable). Circumstantial guarantees of trustworthiness in turn may include whether the recantation is internally consistent; whether the recantation is consistent with other facts; and whether the recanting witness is aware of potential criminal consequences stemming from making a false accusation. **Ferguson**, 354 Wis. 2d 253, ¶25.

¶12    If a defendant establishes each of the above factors, the circuit court must then determine whether a reasonable probability exists that a jury, looking at both the initial accusation and subsequent recantation, "would have a reasonable doubt as to the defendant's guilt." **State v. McCallum**, 208 Wis. 2d 463, 474, 561 N.W.2d 707 (1997). A determination that a recantation is incredible as a matter of law necessarily leads to the conclusion that it would not lead to reasonable doubt in the minds of the jury. **Id.** at 474-75.

¶13    There are several overlapping but potentially conflicting lines of authority regarding what standard(s) of review apply to plea withdrawal claims

based upon newly discovered evidence.[6] We need not resolve any such conflicts here because we would reach the same result under an independent standard of review as we would under a deferential standard of review. Specifically, we conclude that Ross has failed to establish corroboration for the recantation. Because that failing alone is dispositive of the newly discovered evidence claim, we need not address the first four criteria of the newly discovered evidence test or whether a jury looking at both the initial accusation and subsequent recantation would have a reasonable doubt as to the defendant's guilt. *See McCallum*, 208 Wis. 2d at 474; *see also State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (courts decide cases on the narrowest possible grounds).

¶14 We first conclude that Karen's asserted motive for falsely accusing Kaleb is not feasible. Karen claimed that she lied to Sarah's father, the police, and a forensic interviewer because she did not want to make Sarah "look like a fool or a liar." But Sarah had not alleged that Kaleb assaulted Karen in the parking lot. Rather, Sarah had alleged that Dustin assaulted her there. Karen did not need to

---

[6] For example, *State v. Plude*, 2008 WI 58, ¶¶31, 33, 310 Wis. 2d 28, 750 N.W.2d 42, states that the decision whether to grant a motion for a new trial based upon newly discovered evidence is a discretionary determination that involves a question of law regarding whether the newly discovered evidence would lead a jury to have reasonable doubt about the defendant's guilt. *State v. Taylor*, 2013 WI 34, ¶25, 347 Wis. 2d 30, 829 N.W.2d 482, states that whether a manifest injustice warranting plea withdrawal has occurred presents a "question of constitutional fact," under which we accept the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous, but independently determine whether those facts are sufficient to establish a constitutional violation. *State v. Ferguson*, 2014 WI App 48, ¶¶26-29, 354 Wis. 2d 253, 847 N.W.2d 900, cites a concurrence by Justice Shirley Abrahamson in *State v. McCallum*, 208 Wis. 2d 463, 481-83, 561 N.W.2d 707 (1997), for the propositions that: (1) questions regarding when the evidence was discovered and the defendant's diligence in doing so are subject to the "clearly erroneous" standard of review applicable to factual determinations; (2) questions regarding whether the evidence was material and not cumulative are reviewed under the "erroneous exercise" standard applicable to discretionary determinations; and (3) whether a recantation is incredible as matter of law is integral to the circuit court's ultimate discretionary determination as to whether the recantation would lead to a different result at trial.

invent additional allegations against Kaleb regarding what occurred in the parking lot in order to support Sarah's account or avoid calling her a liar.

¶15     Kaleb asserts that Karen was also motivated to invent false allegations against him because she was mad that he was ignoring her. There is no evidentiary basis for that assertion, however, because Karen did not testify to that motivation and Kaleb did not introduce any sworn statement from Karen to that effect.

¶16     Kaleb further asserts that text messages Karen sent to Dustin on the night of the incident reveal inconsistencies in her original story and that she had "rape" on her mind. The text messages were referenced in the original complaint, however, and are not newly discovered. They therefore have no place in the analysis of whether the recantation was supported by other newly discovered evidence.

¶17     Next, we conclude that Karen's recantation lacked internal consistency. In particular, Karen's testimony did not explain what the group had been doing together in the parking lot; when or why Karen entered Sarah's apartment so as to leave Sarah in the hallway with Kaleb, Kyle, and Dustin; why Karen was standing on one side of the door listening to what was going on in the hallway; how the apartment door became cracked; or why any of the three males would throw the microwave down the stairs. Karen's assertion that she lied to protect Sarah because Sarah was her best friend was undermined by the fact that Karen and Sarah did not have any further contact with one another once Sarah moved away a few weeks after the assaults. Moreover, Karen's assertions that Sarah was crying merely because she was afraid of getting in trouble and that Karen was crying because she was scared and confused make little sense.

¶18     Karen's recantation was also inconsistent with other facts that supported her prior statements. Most significantly, Karen's assertion that nothing

8

"assaultive" occurred in the hallway was directly contradicted by Sarah's statement that Kaleb assaulted her in the hallway and by the observation of Sarah's sister that Sarah was saying "stop" and pushing Kaleb away when Karen opened the door to let in Sarah. Neither Sarah nor her sister recanted their statements in circuit court. In addition, Karen's denial that Kaleb took her shirt contradicted Kaleb's own statement that the group had met in the parking lot to trade shirts.

¶19 Finally, as the circuit court noted, Karen's extensive criminal history made it less likely that she would be concerned about potential criminal penalties for perjury. Without showing a feasible motive for Karen to have falsely accused Kaleb in the first place, or any substantial guarantees of trustworthiness for Karen's recantation, Kaleb failed to satisfy his burden of demonstrating by clear and convincing evidence that the recantation was corroborated. It follows that he was not entitled to relief on his claim of newly discovered evidence. *See State v. Eckert*, 203 Wis. 2d 497, 516, 553 N.W.2d 539 (Ct. App. 1996) (holding that all five elements are required).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).